IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHARLES V. CALDER et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| VS. | ) | Civil Action No:  SA-07-CA-340-XR |
| | ) | |
| SBC PENSION BENEFIT PLAN et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

On this date, the Court considered Defendants' Motion to Dismiss for Failure to State a

Claim (docket no. 64), Plaintiffs' Response (docket no. 83), and Defendants' Reply (docket no. 95).

After careful consideration, the Court will deny the motion.

**I. Background**

This case was originally filed on February 28, 2006 in the Northern District of Illinois by

Charles Calder and Leslie Vaughn-Smith[1], former management employees of AT&T, on behalf of

themselves and a putative class of participants in the AT&T Pension Benefit Plan.[2]  Plaintiffs seek

a declaratory judgment that a series of amendments to the plan, known as the "actual base pay" or

"actual pay" amendments, never became effective as to them or the members of the proposed Class

(with certain exceptions) because the plan administrator allegedly failed to comply with the notice

requirements of ERISA § 204(h), 29 U.S.C. § 1504(h).

---

[1]Plaintiff Leslie Vaughn-Smith has since died, and the Court granted Plaintiffs' motion to
substitute the representative of her estate, William H. Smith, as a Plaintiff.  Docket no. 90.

[2]The AT&T Pension Benefit Plan is a defined benefit pension plan governed by ERISA.

The version of ERISA § 204(h) that applies to this case provided:[3]

> A [defined benefit plan] may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to ... (A) each participant in the plan, (B) each beneficiary who is an alternate payee (within the meaning of section 206(d)(3)(K)) under an applicable qualified domestic relations order (within the meaning of section 206(d)(3)(B)(i)), and (C) each employee organization representing participants in the plan, except that such notice shall instead be provided to a person designated, in writing, to receive such notice on behalf of any person referred to in paragraph (A), (B), or (C).

As explained by a Utah district court, "While there appears to be very little case law interpreting section 204(h), by its terms it forbids secret amendments through which an employee could have the value of his or her benefits reduced by a prospective amendment to the accrual provisions of a pension plan." *Pickering v. USX Corp.*, 809 F. Supp. 1501, 1560 (D. Utah 1992). "Through section 204(h), Congress ensured that if a plan sponsor were to amend the plan prospectively, the plan administrator must inform employees and their representatives of those changed circumstances." *Id.* at 1560-61.

Count One, entitled "violations of ERISA § 204(h), 29 U.S.C. § 1054(h)," seeks to invalidate the actual base pay amendments as a result of the defendants' failure to provide adequate notice of the amendments in violation of ERISA § 204(h). Count Two, entitled "Claim for Benefits," seeks a recalculation of Plaintiffs' pension benefits in accordance with the terms of the unamended Plan.

On April 28, 2006, Defendants filed a "Motion to Dismiss or Transfer." Therein, they moved for dismissal under Rule 12(b)(3) based on improper venue or, in the alternative, for transfer to this

---

[3]ERISA § 204(h) was amended by the Economic Growth and Tax Relief Reconciliation Act of 2001 (EGTRRA), which applies to plan amendments that take effect on or after June 7, 2001, and thus, does not apply to the amendments at issue here.

District pursuant to 28 U.S.C. § 1404(a).  Second, Defendants moved for dismissal under Rule 12(b)(6) because "Count One of Plaintiffs' Complaint is barred by the statute of limitations and Count Two, which is derivative of Count One is similarly barred."  Third, Defendants moved in the alternative for dismissal under Rule 12(b)(6) to dismiss Count Two for failure to exhaust administrative remedies.

On May 11, 2006, Plaintiffs filed a First Amended Class Action Complaint and added another named Plaintiff, David R. Koenig.  Plaintiffs further amended the Complaint to address Defendants' limitations argument.  In response, Defendants moved for an extension of time to respond to the Amended Complaint.  By minute entry, the original Motion to Dismiss or Transfer was denied as moot.  Docket no. 36.  In a minute entry dated June 1, 2006, Judge Gottschall granted Defendants' motion for extension of time to move or answer, ruling that Defendants were to file an amended motion to dismiss for improper venue or to transfer by June 15, 2006 and an amended Rule 12(b)(6) motion twenty days after the ruling on the amended motion to dismiss for improper venue. On June 15, Defendants filed an "Amended Motion to Dismiss or Transfer Plaintiffs' First Amended Class Action Complaint."  Therein, Defendants argued that venue was improper in Illinois, and that the case should be dismissed or transferred.  However, in a footnote to the Reply brief, Defendants asserted that "Plaintiffs' Count II claim may not even be brought at all in this lawsuit as Plaintiffs have not exhausted their administrative remedies under the Plan."

On April 13, 2007, the Illinois district court considered the Amended Motion to Dismiss or Transfer.  Judge Gottschall concluded that venue was proper in the Northern District of Illinois, but granted the motion to transfer venue under § 1404(a).  In a footnote to the Order, Judge Gottschall noted that Defendants had raised the exhaustion issue, but held that, because the argument was

3

"relegated to a footnote in defendants' reply brief," "the argument [was] not only insufficiently developed but also presented in such a way that the plaintiffs have had no opportunity to respond to it." As a result, Judge Gottschall concluded, the argument was deemed waived.

Pursuant to Judge Gottschall's order, this case was transferred to this District and assigned to the Undersigned Judge in April 2007. Thereafter, Defendants filed another Motion to Dismiss, docket no. 64, which the Court will now consider.

## II. Analysis

In this pre-answer motion, Defendants move to dismiss under Rule 12(b)(6) for failure to state a claim. Defendants assert that Count One is barred by limitations (as is Count Two, which Defendants assert is derivative of Count One), and that Count Two is barred by failure to exhaust administrative remedies.

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must generally base its decision only on the pleadings. FED. R. CIV. P. 12(b)(6); *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992). However, documents referenced in and incorporated into the pleadings may be considered without converting the motion into a motion for summary judgment.[4] The Court must accept "all well-pleaded facts as true and . . . view them in the

_____

[4]Plaintiffs have incorporated two versions of the Plan (the plan instrument governing the Plan as restated through February 1, 1995 and as amended thereafter (through January 31, 2002)) in their entirety, along with all documents and instruments governing the Plan and subsequent amendments. Am. Compl. at 19 n.7. Plaintiffs also incorporated all exhibits attached to the Original Complaint. Am. Compl. at 27 n.12, including a Nov. 17, 1997 request for consent to amend the SBC Pension Benefit Plan – Nonbargained Program (ex. 1); a Jan. 12, 1999 request to approve the merger of the PTG Plan into the SBC Pension Benefit Plan (ex. 2); an April 13, 1999 request to approve amendments to the SBC Pension Benefit Plan – Nonbargained Program and a Sept. 11, 1999 request to approve amendments to the SBC Pension Benefit Plan – Nonbargained Program (ex. 3); an April 14, 1999 Notice of Amendment to SBC Pension Plan – Nonbargained Program (ex. 4); a document entitled "Explaining Actual Base Pay" (ex. 5); an email chain (ex. 6); a June 14, 1999 Notice of

light most favorable to the plaintiff." *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). In other words, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955, 1965 (2007). Statute-of-limitations defenses and failure to exhaust may be raised in a 12(b)(6) motion.

## A. Limitations

The first amendment at issue was adopted in 1997 and effective in 1998, and the last amendment occurred on January 4, 2000. Leslie Vaughn-Smith, Charles Calder, and David Koenig all retired under a special Enhanced Pension Retirement ("EPR") Program and received their retirement benefits under the Plan as supplemented by the EPR enhancements in a lump sum. Vaughn-Smith and Calder contested the calculation of their benefits[5] (but did not argue that they had not received notice of plan amendments and that § 204(h) rendered them ineffective as a basis), but

---

Amendment to SBC Pension Plan – Nonbargained Program (ex. 7); a November 1999 request for approval of amendment to the SBC Pension Benefit Plan– Nonbargained Program (ex. 8); an SBC Informer email re: Important Benefits Information dated Nov. 15, 1999 (ex. 9); a Dec. 31, 1999 request for approval of an amendment to the SBC Pension Benefit Plan – Nonbargained Program (ex. 10). Last, Plaintiffs incorporated "[t]he complete administrative records pertaining to Plaintiff Calder and Vaughn-Smith's claims and any other participant to whom the Plan, the Company, the Plan's Benefit Plan Committee or the Plan's Service Center cited any ERISA § 204(h) notice as a basis for denial of the participant's claim or appeal." Am. Compl. at 47 n.25.

[5]Vaughn-Smith and Calder are members of the certified class in *Wagener v. SBC Pension Benefit Plan-Nonbargained Program*, pending in the United States District Court for the District of Columbia, which will consider the claims asserted by Vaughn-Smith and Calder regarding the interpretation of the amended plan. The action before this Court seeks the same monetary benefits, but proceeds under the theory that the plan amendments never took effect.

Koenig did not.  Vaughn-Smith's appeal was denied by the Benefit Plan Committee on September 25, 2001, and Calder's appeal was denied on March 19, 2002.  As noted, Plaintiffs filed suit on February 28, 2006.

### 1. Summary of the Arguments

Defendants contend that Count I is barred by the statute of limitations in ERISA § 413. Defendants assert that, when a Plaintiff challenges an initial failure by the plan fiduciary (the plan administrator) to provide adequate notice under § 204(h), the claim is subject to the statutory limitations period applicable to breach of fiduciary duty claims set forth in ERISA § 413, which provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
>
> > (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> >
> > (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.  Defendants contend that § 413 applies because this action was commenced "under this subchapter" and involves claims "with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part."  Thus, Defendants argue, under ERISA § 413, "Plaintiffs' claims were barred by limitations as of the earlier of three years from the dates they received their retirement benefits under the Plan or six years from the date of the alleged violation,

both of which occurred long before Plaintiffs filed their claims."

Plaintiffs respond that Defendants have incorrectly characterized their claim as one for breach of fiduciary duty to take advantage of ERISA § 413.  Plaintiffs contend that the applicable statute of limitations is not § 413, but rather is the most analogous state statute of limitations under Illinois law.  Plaintiffs point out that Judge Gottschall ruled that venue was proper in the Northern District of Illinois, but nevertheless transferred the action to the Western District of Texas for the convenience of the parties under § 1404(a).  Plaintiffs assert that, because venue was proper in Illinois, the rule of *Van Dusen v. Barrack*, 376 U.S. 612 (1964)[6] governs, and Illinois law applies.  Plaintiffs contend that their action sounds in contract, and Illinois's statute of limitations for suits on a written contract is ten years, making Plaintiffs' suit timely "even without regard to when [the claims] accrued."  Plaintiffs argue that § 413 is inapplicable because it only applies to a fiduciary's breach of any responsibility, duty, or obligation under part 4, and § 204(h) is located in part 2.  Further, Plaintiffs contend, even if § 413 could apply to breaches of fiduciary duties outside part 4, Plaintiffs assert no breach of any fiduciary duty because § 204(h) creates no fiduciary duty on the part of the plan administrator.  Rather, Plaintiffs argue, the duty to give notice is non-discretionary, and is simply a condition precedent to the plan amendment's taking effect.  The mere involvement of the plan administrator in giving the required notice, Plaintiffs contend, does not make a failure to satisfy the requirements of § 204(h) an actionable fiduciary breach.

In the alternative, Plaintiffs argue that, even if § 413 does apply to their claims, they were still timely filed because Plaintiffs did not have actual knowledge of the violations more than three years

---

[6]"[W]here the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under s 1404(a) generally should be, with respect to state law, but a change of courtrooms."

prior to filing suit, the action was filed within six years of the last action that constituted a part of the breach, and Plaintiffs have adequately pleaded fraudulent concealment.

    2. Analysis

    Subchapter 1 ("Protection of Employee Benefit Rights"), Subtitle B ("Regulatory Provisions"), is divided into seven parts.  Part 1 governs "Reporting and Disclosure."  Part 2 governs "Participation and Vesting."  Section 204(h) is located in part 2.  Part 3 governs "Funding."  Part 4 governs "Fiduciary Responsibility."   ERISA § 413 is located in part 4.   Part 5 governs "Administration and Enforcement."  Parts 6 and 7 apply to group health plans and are irrelevant here.

    ERISA § 413, located in part 4 and entitled "Limitation of actions," provides that "[n]o action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation *under this part*, or with respect to a violation *of this part*, after the earlier of [three or six years] ..." 29 U.S.C. § 1113 (emphasis added).  Plaintiffs assert that their Amended Complaint "invokes the civil enforcement provisions of ERISA § 502(a)(1)(B) and § 502(a)(3)" and does not involve any violation of part 4 or a fiduciary's breach of any responsibility, duty, or obligation under part 4.

    ERISA § 502, 29 U.S.C. § 1132, entitled "Civil enforcement," is located in part 5, and provides in relevant part:

    (a) Persons empowered to bring a civil action

    A civil action may be brought–

        (1) by a participant or beneficiary–

            (A) for the relief provided for in subsection (c) of this section ["Administrator's refusal to supply requested information; penalty for failure to provide annual report in complete form"], or

> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132. Though § 502(a)(2) is the only of these three subsections that expressly references a section contained in part 4 (section 1109 is located in part 4 and is entitled "Liability for breach of fiduciary duty"), it is not the only section that provides relief to participants for a plan administrator's breach of fiduciary duty.

In *Massachusetts Mutual Life Insurance Company v. Russell*, 473 U.S. 134 (1985), the Supreme Court examined § 502(a)(2) and concluded that it did not authorize the plaintiff's individual suit for compensatory and punitive damages against an administrator who had wrongfully delayed payment of her benefit claim. The Court concluded that § 502(a)(2) was concerned only with remedies that would protect the entire plan, and does not authorize any relief except for the plan itself.[7]

In *Varity Corporation v. Howe*, 516 U.S. 489 (1996), the Court revisited *Russell* when it considered whether an employer/plan administrator was acting in a fiduciary capacity when it misled beneficiaries and, if so, whether that violated the fiduciary obligations of ERISA § 404. Further, the

---

[7]The Supreme Court recently limited the holding of *Russell*, concluding that the "entire Plan" language from *Russell* does not apply to defined contribution plans and holding that, "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue v. DeWolff*, ___ U.S. ___, 128 S. Ct. 1020 (2008).

Court considered whether ERISA § 502(a)(3) authorized the plan beneficiaries to bring suit seeking

relief for individual beneficiaries harmed by the administrator's breach of fiduciary obligations.  The

Court concluded that the employer/plan administrator was acting in a fiduciary capacity, recognizing

that ERISA provides that a person is a fiduciary to the extent that he or she "exercises any

discretionary authority or discretionary control respecting management" of the plan or "has any

discretionary authority or discretionary responsibility in the administration" of the plan.  *Id.* at 498

(quoting ERISA § 3(21)(A)).  Thus, the Court considered "the statutory terms which limit the scope

of fiduciary activity to discretionary acts of plan 'management' and 'administration.'"  *Id.* at 502.

The Court held that "the factual context in which the statements were made, combined with the plan-

related nature of the activity, engaged in by those who had plan-related authority to do so, together

provide[d] sufficient support for the District Court's legal conclusion that Varity was acting as a

fiduciary."  *Id.* at 503.  In considering whether Varity's actions were a breach of fiduciary duty, the

Court noted that "ERISA makes clear that a fiduciary has obligations other than, and in addition to,

managing plan assets."  *Id.* at 511.  For example, the Court stated, "a plan administrator engages in

a fiduciary act when making a discretionary determination about whether a claimant is entitled to

benefits under the terms of the plan documents."  *Id.*  The Court then noted that ERISA §

502(a)(1)(B) "specifically provides a remedy for breaches of fiduciary duty with respect to the

interpretation of plan documents and the payment of claims."  *Id.* at 512 (citing § 502(a)(1)(B) and

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108 (1989) (stating that § 502(a)(1)(B)

explicitly authorizes a beneficiary to bring an action to enforce his rights under the plan)).  The Court

then asked, "Why should we not conclude that Congress provided yet other remedies for yet other

breaches of other sorts of fiduciary obligation in another, 'catchall' remedial section [referring to §

10

502(a)(3)?" *Varity*, 516 U.S. at 512.  The Court concluded that the structure of § 502(a) suggests

that § 502(a)(3) (authorizing a participant, beneficiary, or fiduciary to bring a civil action seeking

equitable relief for violations of subchapter 1 or the plan terms) and § 502(a)(5) (authorizing the

same relief to the Secretary) are "catchall" provisions that offer "appropriate equitable relief for

injuries caused by violations that § 502 does not elsewhere adequately remedy." *Id.*  Accordingly,

plaintiffs could bring their claim for breach of fiduciary duty under § 503(a)(3).

Thus, the fact that Plaintiffs assert that their claims are brought under § 502(a)(1)(B) and §

502(a)(3) does not rule out the possibility that their claims are for breach of a fiduciary duty and that

§ 413's limitations period applies.  In *Varity*, the fiduciary duties that were held to be violated by the

plan administrator's intentional misrepresentations were held to arise under § 404(a).  ERISA §

404(a), 29 U.S.C. § 1104, located in Part 4, provides that, subject to certain sections of ERISA, "a

fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and

beneficiaries and – (A) for the exclusive purpose of: (i) providing benefits to participants and their

beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care,

skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in

a like capacity and familiar with such matters would use in the conduct of an enterprise of a like

character and with like aims; (C) by diversifying the investments of the plan ...; and (4) in accordance

with the documents and instruments governing the plan insofar as such documents and instruments

are consistent with the provisions of this subchapter and subchapter III of this chapter."  In *Radford*

*v. General Dynamics Corp.*, 151 F.3d 396, 399 (5th Cir. 1998), the Fifth Circuit applied § 413 to a

*Varity* claim based on negligent misrepresentation[8] because both § 413 and § 404(a) are contained in part 4, and both § 404(a) and § 502(a)(3) are in subchapter 1.  The parties have not cited, and the Court has not located, any Fifth Circuit decision applying § 413 in the situation presented here.

In this case, Plaintiffs' first cause of action arises under § 502(a)(3) in that it is a suit by a beneficiary to obtain other appropriate equitable relief to enforce a provision of Subchapter 1 (§ 204(h)).  Plaintiffs' second cause of action arises under § 502(a)(1)(B) in that it is a claim to recover benefits due to the beneficiaries under the terms of their plan.  Defendants generally assert that "Plaintiffs allege in Count I that the Plan Administrator breached its fiduciary duty by failing to give proper notice of that plan amendment that they say was required by § 204(h) ...," docket no. 64 at 1, and that "Plaintiffs allege a breach of fiduciary duty, specifically a failure to give proper notice of plan amendments as required by ERISA § 204(h), *id.*  Plaintiffs, however, expressly disavow any claim for breach of fiduciary duty and the term "fiduciary duty" does not appear in the Amended Complaint.

Defendants argue that the Plaintiffs' claim that Defendants failed to provide notice is a claim "with respect to" a fiduciary's breach of any responsibility, duty, or obligation under" part 4 because ERISA § 404 provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  Thus,

---

[8] The Fifth Circuit, however, noted that *Varity* involved intentional misrepresentations to employees, while *Radford* involved negligent misrepresentations, but did not address whether Radford's claim was indeed a *Varity* claim because the parties did not dispute that a *Varity* claim had been stated.  *Radford*, 151 F.3d at 398 n.3.

Defendants argue, § 413 governs the claim.

This argument sweeps quite broadly, however, insofar as it would subsume any claim for benefits because a  claim for benefits would also be a claim "with respect to" the fiduciary duty of providing benefits to participants and their beneficiaries under § 404.  Clearly, however, not all claims for benefits that somehow relate to a breach of a plan administrator's duty are solely claims for breach of fiduciary duty.  Instead, they can be either, or both.  *See Prod. & Maint. Employees Local v. Roadmaster Corp.*, 954 F.2d 1397, 1402 (7th Cir. 1992) (noting that the factual overlap between the 204(g) and (h) counts and plaintiff's fiduciary counts was "such that the counts are not really separate claims but merely different legal characterizations of the same facts").  Thus, even accepting Defendants' argument as correct, which the Court does not decide, just because Plaintiffs' claim *could* be a claim for breach of fiduciary duty if Plaintiffs chose to cast it as such does not mean that it *necessarily is* a claim for breach of fiduciary duty to the exclusion of a claim for benefits. Here, Plaintiffs have expressly disavowed any claim for breach of fiduciary duty, and assert only a claim for benefits.  Plaintiffs explain that they framed their counts the way they did to attempt to comply with Seventh Circuit precedent.  They assert, and the Court agrees, that in the Fifth Circuit "the more appropriate vehicle for raising Plaintiffs' claims is ERISA § 502(a)(1)(B)."  Docket no. 83 at 15 n.13.  They note that, though Count Two is pled as operating sequentially after a ruling in Plaintiffs' favor on Count One, Count Two also replicates all of the allegations of invalidity in Count One and seeks the same relief.  Thus, the Court agrees with Plaintiffs that this case is most appropriately viewed as a claim for benefits primarily under § 502(a)(1)(B).[9]

---

[9]To that end, Count One appears to seek duplicative equitable relief via § 502(a)(3).  The Court notes that equitable relief would not be appropriate if full relief can be and is obtained under Count Two via § 502(a)(1)(B).

Though there is little case law on point, and no controlling Fifth Circuit precedent, the existing case law supports these conclusions. Defendants cite *Suozzo v. Bergreen*, Civ. A. No. 00-CIV-9649, 01-CIV-7258, 2002 WL 1402316 (S.D.N.Y. June 27, 2002), in support of their claim that "[i]f a plaintiff's allegations challenge an initial failure by the plan fiduciary to provide an adequate 204(h) notice, the claim is subject to the statutory limitations period applicable to breach of fiduciary duty claims set forth in ERISA § 413." *Suozzo* involved several claims, including a dispute over benefits due under an ERISA plan and a violation of § 204(h). *Id.* at *1. Specifically, the plaintiff alleged that "the Administrative Committee erred by giving effect to the Discretionary Bonus Amendment and a number of new changes in the Restated Plan when denying his claim for additional benefits" but the plaintiff did "not specify the precise provision of ERISA under which the plaintiff [sought] to raise this challenge." *Id.* at *5. The court concluded that, "[t]o the extent that the plaintiff seeks to recover benefits allegedly due to him under the Plan by raising a straightforward challenge to the Administrative Committee's decisions, the plaintiff is raising a claim for benefits under 29 U.S.C. § 1132(a)(1)(B)." *Id.* However, the court noted, "the plaintiff also seeks equitable relief in this action, and alleges in his second cause of action that the Committee breached a fiduciary duty to him by applying certain amendments to him." *Id.* (noting that plaintiff cited 29 U.S.C. § 1104). The court concluded that, "[t]o the extent that the plaintiff is seeking appropriate equitable relief for violations of ERISA that resulted in an erroneous determination of his benefits, the plaintiff is raising a claim under 29 U.S.C. § 1132(a)(3)." *Id.* The court cited *Varity Corp. v. Howe*, 516 U.S. 489, 513-14 (1996), for the proposition that ERISA claims for breach of fiduciary duty are not necessarily duplicative of claims for benefits, and concluded that "[t]hese claims may proceed in tandem at this stage." *Id.* The court then considered the defendants' statute

14

of limitations defense to the complaint "insofar as it raise[d] a claim for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3) relating to the Committee's application of the Discretionary Bonus Amendment." *Id.* at *6. The court then applied § 413 to the plaintiff's fiduciary claims, and held that the breach was in the application of the amendments to the plaintiff, not the initial failure to provide notice, and thus limitations began to run as of the date the amendments were applied to the plaintiff. *Id.* at *9. However, the court reiterated that "the plaintiff also states a claim for the recovery of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) that is based on the simple erroneous application of amendments to him and does not necessary depend on any allegations of a breach of fiduciary duty." *Id.* Thus, *Suozzo* does not support Defendants' position. Insofar as the plaintiff expressly alleged a claim for breach of fiduciary duty, even citing § 1104, the court applied § 413. However, the court also held that the claim could be characterized as a non-fiduciary claim "based on the simple erroneous application of amendments" that did "not necessarily depend on any allegations of a breach of fiduciary duty" and thus the statute of limitations defense was inapplicable. In this case, Plaintiffs have expressly disavowed any breach of fiduciary duty claims, and thus *Suozzo* supports their position that § 413 does not apply to their claims.

In *Copeland v. Geddes Federal Savings & Loan Association Retirement Income Plan*, 62 F. Supp. 2d 673 (N.D.N.Y. 1999), Copeland sought "past and future retirement benefits" pursuant to an ERISA plan. The plan was amended and restated January 1, 1981. On November 13, 1984, the plan was amended to enhance the Social Security Option. In 1989, the plan consultant discovered than the Social Security Option was costing the plan substantially more than the normal retirement option. In 1990, the board amended the plan to make all retirement options actuarially equivalent. Copeland retired in 1993 and elected the Social Security Option. The defendants computed her

15

retirement under the provisions of the 1990 amendment to the plan.  Copeland demanded benefits pursuant to the 1984 version, and defendants refused.  Copeland then sued for benefits under § 502(a)(1)(B), arguing that defendants failed to provide adequate written notice of the amendment and thus it was not properly adopted.  The court ruled that plaintiff was entitled to benefits under the 1984 version of the plan.  To the extent the plaintiff also asserted a claim for breach of fiduciary duty based on the defendant's denying her claim for benefits under the 1984 version, the court concluded that this claim under § 502(a)(3) was duplicative of her benefits claim and should be dismissed.

In *Romero v. Allstate Corp.*, 404 F.3d 212 (3d Cir. 2005), the Third Circuit Court of Appeals characterized the plaintiff's claims under ERISA §§ 204(g) and (h) as "ERISA non-fiduciary duty claims."  *Id.* at 215, 219, 220.  Plaintiffs alleged that Allstate and its plan administrator violated ERISA § 204(h) by failing to provide notice to plan participants when it added a phase-out amendment that was alleged to significant reduce the rate of future benefit accrual.  *Id.* at 218-19. The court noted it had "never addressed the limitations period applicable to an ERISA § 204(h) claim" and that "it does not appear that any court has done so."  *Id.* at 221.  In *Romero*, plaintiffs also brought a claim under § 204(g)[10] and the court characterized the 204(g) and 204(h) claims as "intrinsically tied together in that it is the *effect* of the amendment challenged in Count III [§ 204(g)] that plaintiffs say triggered the notice requirement alleged to have been violated in Count IV [§ 204(h)]."  *Id.* at 221 (emphasis in original).  The court did "not decide the statute of limitations applicable to every possible iteration of an ERISA § 204(h) claim, but only that applicable to the ERISA § 204(h) claim made" in *Romero*.  *Id.* at 221 n.7.  The court noted that, for such "non-

_____

[10]Plaintiffs claimed that the phase-out amendment violated § 204(g) because it had the effect of eliminating or reducing an early retirement benefit.  *Id.* at 218.  Section 204(g) governs decreases of accrued benefits by a plan amendment.

16

fiduciary claims" ERISA contains no statute of limitations, and thus the "'limitations period applicable to the forum state claim most analogous to the ERISA claim at hand' is to be borrowed and applied to an ERISA non-fiduciary duty claim." *Id.* at 220 (quoting *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1180 (3d Cir. 1992)).  The court then concluded that Pennsylvania's residual six-year limitations period applied to the § 204(h) claim.[11]

In *Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006), the Second Circuit considered a number of claims, including that an amendment violated 204(g) and (h).  The court concluded that the defendants violated both 204(g) and 204(h) and that the amendment was ineffective.  The court held that "the necessary remedies can be fully provided under § 502(a)(1)(B)." *Id.* at 269.  The court stated that, "On remand, the remedy crafted by the district court for those employees rehired prior to 1998 should utilize an appropriate pre-amendment calculation to determine their benefits.  We recognize the difficulty that this task poses because of the ambiguous manner in which the pre-amendment terms of the Plan described how prior distributions were to be treated.  As guidance for the district court, we suggest that it may wish to employ equitable principles when determining the appropriate calculation and fashioning the appropriate remedy." *Id.* at 268.  Plaintiffs had brought an additional claim under § 502(a)(3) seeking a declaration that the amendment violated ERISA and enjoining its future use.  Plaintiffs argued that, although they ultimately sought money damages through the recalculation of their pension benefits, the "vehicle" for such relief was a judgment declaring that the amendment was prohibited by ERISA and enjoining its application in calculating the benefits of any plan participants. *Id.* at 269.  The court concluded that this additional equitable

---

[11]*See also Prod. & Maint. Employees Local v. Roadmaster Corp.*, 954 F.2d 1397 (7th Cir. 1992) (noting that benefits claim and breach of fiduciary duty claim under 204(g) and 204(h) were different legal characterizations of the same facts).

relief was not warranted because "[t]he relief that the plaintiffs seek, recalculation of their benefits consistent with the terms of the Plan, falls comfortably within the scope of § 502(a)(1)(B), which allows a plan participant 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* at 270. Because adequate relief was available under § 502(a)(1)(B), there was no need on the facts of the case to also allow equitable relief under § 502(a)(3). The court noted that the "gravaman of this action remains a claim for monetary compensation." *Id.* The court also remanded a separate claim for breach of fiduciary duty under § 502(a)(3) based on the defendants' allegedly publishing and supplying misleading information to the plaintiffs because it was not duplicative.

Courts have also distinguished between benefits claims and breach of fiduciary duty claims in the context of administrative exhaustion of remedies because benefit claims require exhaustion while fiduciary duty breach claims do not. *Galvan v. SBC Pension Benefit Plan*, 204 Fed. Appx. 335 (5th Cir. 2006). The Fifth Circuit has held that plaintiffs may not avoid exhaustion by casting their benefit claims as breach of fiduciary duty claims. *See, e.g.*, *Simmons v. Willcox*, 911 F.2d 1077 (5th Cir. 1990) (exhaustion requirement applies to fiduciary claims that are disguised benefits claims rather than true breach-of-fiduciary-duty claims); *Smith v. Sydnor*, 184 F.3d 356, 365 (4th Cir. 1999) (interpreting *Simmons* as requiring administrative exhaustion where a fiduciary claim is based on either the denial of benefits or a similar decision regarding a benefits claim). Fiduciary claims have been considered disguised benefits claims when "resolution of the claims rests upon an interpretation and application of an ERISA-regulated plan rather than on an interpretations and application of ERISA." *D'Amico v. CBS Corp.*, 297 F.3d 287, 291 (3d Cir. 2002) (cited with approval in *Galvan*, 204 Fed. Appx. at **4). Further, in *Milofsky v. American Airlines*, 442 F.3d 311, 313 (5th Cir.

18

2006), the court held that it was error to conclude that fiduciary claims were disguised benefit claims because the plaintiffs did not seek the distribution of any benefits.  In this case, Plaintiffs' Amended Complaint "seeks a declaration that the actual base pay amendments are invalid as to them under ERISA § 204(h) and seeks the recovery (with interest) of the benefits Plaintiffs are due under the Plan absent the actual base pay amendments."  Docket no. 83 (Plaintiffs' Response to Motion to Dismiss) at 3.  Resolution of their claim depends in part on an interpretation and application of ERISA (§ 204(h)) and in part on an interpretation and application of the plan (in order to determine the proper benefit amount).  Though these factors do not clearly establish the claim as one for benefits instead of breach of fiduciary duty, the Court agrees with the Second Circuit that the "gravamen" of such a claim is a claim for benefits.  Thus, the Court concludes that Plaintiffs' claim is in fact a claim for benefits, and not a "disguised fiduciary claim."

### 3. Conclusion

As explained above, the Court concludes that Plaintiffs have not asserted a claim subject to § 413.  Accordingly, Defendants' motion to dismiss based on the application of § 413 is denied.[12]

## B. Exhaustion of Administrative Remedies

Defendants contend that Count Two should be dismissed or stayed for failure to exhaust administrative remedies.

### 1. Waiver

As a preliminary matter, the Court must address Plaintiffs' argument that Defendants have

---

[12] Plaintiffs contend that the applicable statute of limitations is ten years under Illinois law. Defendants do not respond to this assertion.  The Court makes no determination at this time regarding the applicable statute of limitations.  The Court holds only that § 413 does not apply to Plaintiffs' claims.

waived this argument.  Plaintiffs contend that "Judge Gottschall found the manner in which Defendants presented their exhaustion defense in their reply brief in support of the previous motion to dismiss both incomplete and unfair and held the defense waived."  Docket no. 83 at 22.  Plaintiffs assert that "[h]er holding is law-of-the-case and should be followed" and that "Defendants had numerous options available to them if they disagreed with Judge Gottschall's order but surely one of them was not to ignore her ruling entirely and blithely re-assert here the defense held waived." *Id.*

As pointed out above and in Defendants' motion to dismiss and reply brief, Judge Gottschall issued an order on June 1, 2006 permitting Defendants to delay filing a motion to dismiss under Rule 12(b)(6) until after a decision was made on the venue motions.  Typically such serial 12(b) motions are precluded by Rule 12(g), but Judge Gottschall granted Defendants the right to file a 12(b)(6) motion after the filing of a 12(b)(3) motion.  Judge Gottschall's conclusion that the exhaustion argument raised in a footnote in the venue motion was "waived" can only be read to mean that it would not be considered for purposes of that motion.  Defendants' imprudent raising of the exhaustion issue in the transfer motion and Judge Gottschall's refusal to consider it therein do not defeat the right earlier granted by Judge Gottschall to file a subsequent 12(b)(6) motion on those issues.  Accordingly, Defendants properly raise their exhaustion argument in this motion.

### 2. Summary of the Arguments

Defendants argue that, under plain Fifth Circuit law, a claim for benefits under a plan cannot be brought in court until a plaintiff has exhausted his administrative remedies under the plan. Defendants contend that none of the three named plaintiffs have exhausted their administrative remedies because there has been no calculation of benefits by the plan administrator under the

20

unamended plan, and there has been no administrative appeal of any such calculation.  Defendants assert that, when a plaintiff's lawsuit presents a new argument that is different from the argument presented in the administrative review process, the plaintiff has not exhausted his administrative remedies on the new argument.  Defendants argue that Plaintiffs' benefits claim should be dismissed "so that the Plan can compute the benefits due under the pre-amended Plan, and, if Plaintiffs have any complaint of that determination, they can follow the administrative procedures in the Plan before asking this Court to consider a benefits claim."  Defendants' argument assumes that this Court would have already granted Count I and held the amendments invalid.

Plaintiffs respond that they have no obligation to exhaust their "statutorily-premised benefit claim in the first place" because the only issue is whether the amendment was valid, not whether the plan was in some other fashion misapplied to the calculation of their benefit.  Plaintiffs argue that "Defendants do not dispute that the Plan's claims process did not and does not provide for voiding Plan amendments" and, even if it did, this Court would not owe the Plan's Benefit Plan Committee any deference with regard to its interpretation or application of § 204(h) to the challenged amendments.  In the alternative, Plaintiffs assert that the Court should hold that Plaintiffs Calder and Vaughn-Smith sufficiently exhausted the Plan's internal claims process.  Plaintiffs argue that Calder and Vaughn-Smith sought the exact same benefits they seek in this action (arguing that "the Plan had improperly excluded an entire pay period's worth of pay from the calculation of their benefit, the same exclusion the validity of which is challenged here"), and ERISA requires them only to exhaust their claim, not every possible theory in support of that claim.  Further, Plaintiffs argue, none of the purposes of exhaustion would be served here by having the plan review the Plaintiffs' claim because the only dispute is over the statutory requirements of § 204(h), which does not involve the plan

21

administrator's interpretation of the plan or the resolution of any facts within the plan's special expertise, but is simply a legal question within the province of the court.

### 2. Analysis

Generally, a claim under ERISA does not accrue until an administrative claim has been filed and denied. *Paris v. Profit Sharing Plan*, 637 F.2d 357, 361 (5th Cir. 1981). Exhaustion is not a jurisdictional prerequisite to pursuing an ERISA claim. Rather, the Fifth Circuit has characterized this administrative exhaustion requirement as an affirmative defense.

Though Defendants' argument appears broad at first, it is actually quite narrow. As noted, Defendants construe the Complaint in such a manner that Count Two is dependent on Count One. They contend that, if the Court grants the relief sought in Count One (a judgment that the amendments are invalid), the Court "cannot give relief to Plaintiffs in Count II until the Plan has had an opportunity to recalculate Plaintiffs' benefits under the basic rate-of-pay standard and the Committee has had an opportunity to review any challenge by Plaintiffs." Docket no. 64 at 18. In fact, "Defendants are not contending that Plaintiffs had an exhaustion requirement before challenging the 204(h) notice." *Id.* They state, "While Calder and Vaughn-Smith may have exhausted their administrative remedies under the Plan with respect to a claim for additional benefits calculated under the Actual Base Pay Amendment, they have not – and could not have – sought the calculation of their Plan benefits under the pre-amendment basic-rate-of-pay standard." *Id.* at 15.

Thus, though at first blush it may appear that Defendants seek dismissal based on a failure to exhaust administrative remedies for the benefits claim because Plaintiffs did not assert the invalidity of the amendment under § 204(h), what Defendants actually assert is only that, if this Court determines that the amendments are invalid and orders that benefits be awarded pursuant to

the basic-rate-of-pay standard, then Plaintiffs must exhaust their administrative remedies with respect to the new benefit calculation under that standard, because the Committee must be allowed to develop an administrative record and exercise its discretion to interpret the Plan under the basic-rate-of-pay standard ... before the Court can consider a complaint that the amount of benefits has been incorrectly calculated."  Defendants assert that the only claim for benefits Plaintiffs are asserting is for benefits calculated under the Plan if it had not been amended, and the amount of any such benefits would have to be determined by the Plan administrator.  Further, Defendants argue, if Plaintiffs had any complaint about that benefits calculation after it was made, they would first have to exhaust the administrative remedies available under the plan before they could bring suit in federal court to complain about the calculation.  Defendants assert that "Plaintiffs do not dispute that, if this Court rules in their favor on Count I, then Plaintiffs' Count II claim for benefits (under the pre-amended Plan) should be decided by the Plan administrator rather than by the Court."  Thus, Defendants assert, "if this Court were to conclude that Plaintiffs' Count I claim for failure to give proper § 204(h) notice is not time barred–and it should not–then Plaintiffs' Count II claim for benefits should be dismissed [or stayed] so that the Plan can compute the benefits due under the pre-amended Plan, and, if Plaintiffs have any complaint of that determination, they can follow the administrative procedures in the Plan before asking this Court to consider a benefits claim."

Because the Court has concluded that Count Two is not dependent on or derivative of Count One, and that, rather, Count One is an independent, stand-alone claim for benefits, Defendants' arguments are inapplicable as they relate only to what should happen after a determination is made on the validity of the plan amendments.  In footnote 17, Defendants appear to eschew any argument that Plaintiffs had to raise the 204(h) notice issue through administrative exhaustion.  If that is the

23

case, it would appear that this Court could determine whether the amendments are valid and then, if it determines that they are not, stay the case to allow the administrator to determine the benefits amount under the pre-amendment plan, as Defendants argue.   But because Defendants are not making any challenge to this Court's consideration of the § 204(h) issue based on failure to exhaust, which the Court has concluded is an issue properly addressed via Count Two, the Court concludes that Defendants' motion to dismiss or stay Count II should be denied on the narrow ground that it asserts.[13]

### III. Conclusion

Defendants' Motion to Dismiss for Failure to State a Claim (docket no. 64) is DENIED.

It is so ORDERED.

SIGNED this 27th day of March, 2008.



XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[13] Plaintiffs appear to have misconstrued Defendants' argument as requiring administrative exhaustion of the 204(h) issue.  This comes as no surprise, given the broad language of Defendants' argument.  The Court does not address that argument, however, as it was not actually raised.  Of course, Defendants are not precluded from including such a defense in their Answer and raising it at a later time.  *See* FED. R. CIV. P. 12(h)(2).

24